UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

ALICIA CURRY,

    Plaintiff,                                                HON.:

Vs.                                                               CASE NO.:

KALAMAZOO PUBLIC SCHOOL SYSTEM,
And RODNEY PREWITT, in his individual and official
Capacity,

    Defendants.
_____/

BEN M. GONEK (P43716)
Attorney for Plaintiff
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-3377
313-963-9310 (fax)
ben@goneklaw.com
_____/

**COMPLAINT AND JURY DEMAND**

    Plaintiff, by and through her attorney, Ben M. Gonek, files this Complaint and Jury Demand, and says:

1. This is an action to enforce civil rights arising out of Plaintiff's employment relationship with Defendants and to vindicate Plaintiff's federally guaranteed *First Amendment* rights to free speech pursuant to 42 USC §1983.

2. Plaintiff Alicia Curry conducts business in Kalamazoo County, Michigan which is located in this District.

3. Defendant Kalamazoo Public School System (KPSS) conducts business in Kalamazoo County, Michigan which is located in this District.

4. Defendant Rodney Prewitt conducts business in Kalamazoo County, Michigan which is located in this District. Defendant Prewitt is being sued in his individual and official capacity.

5. At the time alleged in the Complaint, the actions of Defendants were intentional, illegal and unconstitutional and constitute an intentional tort. As such no Defendant is entitled to defense of governmental immunity.

6. Plaintiff's First Amendment rights to free speech were clearly established and the individual Defendant's violation of her *First Amendment* rights was clearly unreasonable.

7. The events giving rise to this action all took place in this District.

8. This Court has subject matter jurisdiction over this matter pursuant to 28 USC §§ 1331 and 28 USC 1337(a).

9. The amount in controversy exceeds the jurisdictional limit of this Court, exclusive of costs, attorney's fees and interest.

## COMMON FACTS

10. Plaintiff is a certified school administrator, licensed professional counselor and licensed school counselor.

11. In 2001, Plaintiff obtained a Bachelor of Arts degree in Psychology and Organizational Studies from the University of Michigan.

12. In 2005, Plaintiff obtained a Master of Science degree in Professional Counseling from Georgia State University and, in December of 2011, received a Master of Arts degree in Educational Leadership from Western Michigan University.

13. On August 27, 2007, Plaintiff was hired by Defendant KPSS as School Counselor at Loy Norrix High School.

14. Plaintiff worked at Loy Norrix High School for nine (9) years and, due to her exemplary performance, served in various positions including 1st Aspiring Administrator's Academy, Counselor Department Head, Mentor Teacher, Assistant Track and Cross-Country Coach and Nova Net Instructor.

15. On or about July 1 2013, Defendant KPSS hired Rodney Prewitt as the Principal of Loy Norrix High School.

16. When Defendant KPSS hired Defendant Prewitt, they knew that he had been disciplined by the State of Florida Educational Practices

Commission for engaging "in a pattern of sexual harassment of female teachers and staff at his school. Respondent would ask the individuals for sex, invite them to "come over and do him" and otherwise made inappropriate and unprofessional sexual comments to female staff and teachers even after he had been informed that the comments were not welcome." (Final Order, Exhibit A.)

17. In or about the time that Prewitt assumed his position as Principal, he continued his pattern of unlawful behavior documented by the State of Florida.

18. In July of 2013, Defendant Prewitt sent Plaintiff a text message in which he stated "I know you want me."

19. For a brief period of time, Plaintiff and Prewitt dated.

20. In or about December of 2013, Plaintiff told Defendant Prewitt that she had no romantic interest in him.

21. After Plaintiff told Prewitt that she had no romantic interest in him, Defendant Prewitt told Plaintiff that he had "power" in the School District and that his position was secure because of his relationship with the Human Resources Director and Superintendent.

22. Despite Plaintiff's protestations, Defendant Prewitt continued to make unwelcome sexual advances to Plaintiff, including commenting on her

clothes, hair and appearance and asking Plaintiff if she was romantically "involved" with "someone new."

23. Plaintiff ignored Defendant Prewitt's advances in the hope that they would stop. They did not.

24. On another occasion, Defendant Prewitt handed Plaintiff a post-it note with her best friend's address and phone number and stated that he was going to pursue Plaintiff's best friend because he was under the impression that Plaintiff was courting someone else.

25. This frightened and intimidated Plaintiff because her friend lived in Georgia and she had no idea how Defendant Prewitt had obtained her phone number.

26. Afterward, Defendant Prewitt continued to make unwelcome sexual remarks and advances, including "I know you want me to go down" (a suggestion of oral sex) and lingering in Plaintiff's office. This also intimidated and frightened Plaintiff.

27. In January of 2014, after ignoring his advances, Plaintiff was removed from her position as Nova Net instructor despite the fact that Plaintiff's position was already approved by the Director of Secondary Education.

28. In February of 2014, Plaintiff learned from her immediate supervisor that his secretary had complained that Prewitt had sexually harassed his

secretary. This increased Plaintiff's discomfort with Prewitt's sexually predatory conduct.

29. In or about March of 2014, Plaintiff noticed that Defendant Prewitt was singling Plaintiff for undeserved criticism in front of her colleagues. Plaintiff learned from other KPSS employees that "Mr. Prewitt don't like you for some reason."

30. In or about May, 2014, Plaintiff met with Defendant Prewitt and informed him that she found his conduct inappropriate, that the work environment was hostile and oppressive and that she wanted it to stop.

31. Defendant Prewitt told Plaintiff "I don't know what you're talking about" and terminated the meeting.

32. After this meeting, Prewitt frequently belittled Plaintiff and singled her out for criticism front of other employees in order to humiliate and punish her for objecting to his sexual advances.

33. In June of 2015, Plaintiff applied for the Assistant Principal position at Loy Norrix High School.

34. Plaintiff did not receive the promotion to the position of Assistant Principal.

35. Defendant Prewitt was on the interview panel for the Assistant Principal position.

36. In August 2015, Plaintiff spoke with KPSS's Superintendent about what he was looking for in an Assistant principal after she did not receive the promotion and was told that, among other things, he relied heavily on the recommendation of the Principal, Defendant Prewitt.

37. On or about August 26, 2015, Plaintiff submitted a formal complaint to KPSS Human Resources Director, Sheila Dorsey Smith, about Defendant Prewitt's unlawful conduct.

38. Defendant Prewitt's conduct continued and became so difficult, pervasive and oppressive that Plaintiff transferred to another school after nine years at Loy Norrix High School.

39. Plaintiff was the most qualified for the position but did not receive the position. Instead, two less qualified persons were hired for the job(s) Plaintiff had applied for.

40. On August 26, 2015, Plaintiff submitted a formal complaint to KPSS Human Resources Dept. concerning what she believed to be sexual harassment and the creation of a hostile work environment based on sex.

41. After Plaintiff submitted her formal complaint, at least one other female employee came forward to report that Defendant Prewitt has sexually harassed her.

42. On March 28, 2016, despite Defendant Prewitt's previous conduct and additional complaints of unlawful conduct, Defendant KPSS advised Plaintiff that it had found no wrong-doing and that this was a case of "he-said-she-said."

43. Since Plaintiff filed her formal complaint, she has been denied promotion and career advancement opportunities.

## COUNT I:
## VIOLATION OF MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT-SEXUAL HARASSMENT/ CREATION OF A SEXUALLY HISTILE ENVIRONMENT

44. Plaintiff restates each of the above paragraphs for sentence and word for word.

45. Plaintiff was a member of a protected class for purposes of the Elliott-Larsen Civil Rights Act (ELCRA), being MCL 37.2101, et seq.

46. Defendant KPSS is an employer covered by the ELCRA, being MCL 37.2201, et. seq.

47. Defendant Prewitt is an employer covered by the ELCRA.

48. Plaintiff was subjected to unwelcome sexual advances by Defendant Prewitt as set forth above based on her sex.

49. Plaintiff was subjected to unwelcome sexual conduct or communication.

50. The unwelcome sexual conduct or communication was intended to or did in fact substantially interfere with Plaintiff's employment or created am intimidating, hostile or offensive work environment.

51. Plaintiff's submission to Defendant Prewitt's unwelcome sexual advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to Prewitt's sexual demands resulted in a tangible job detriment.

52. Defendant KPSS hired Defendant Prewitt knowing that he had a propensity to sexually harass female employees and create a sexually hostile environment but took no measures to protect its female employees from Defendant Prewitt's predatory actions.

53. Defendant KPSS is responsible for Defendant Prewitt's unlawful conduct under the doctrines of respondeat superior/vicarious liability.

54. Defendants' acts were intentional.

55. Defendants' discrimination of Plaintiff based on sex and sexual harassment of Plaintiff, including quid pro quo harassment and creation of a sexually hostile environment, is a violation of the ELCRA.

56. As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described herein, Plaintiff has suffered, and will continue to suffer, injuries and damages, including, but not limited to, lost

earnings, loss of earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, embarrassment, humiliation, fear, anxiety, outrage and loss of the ordinary pleasures of life.

## COUNT II:
## RETALIATION IN VIOLATION OF THE ELCRA

57. Plaintiff restates each of the paragraphs set forth above word for word.

58. Plaintiff's complaints to Defendants about the violation of her civil rights is protected activity under the ELCRA. MCL 37.2701.

59. Defendants retaliated against Plaintiff by among other things, creating a hostile work environment, depriving her of career opportunities and promotions to positions for which she applied and was qualified.

60. Defendants' actions were intentional and taken with reckless indifference to Plaintiff's rights and sensibilities.

61. As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described herein, Plaintiff has suffered, and will continue to suffer, injuries and damages, including, but not limited to, lost earnings, loss of earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, embarrassment, humiliation, fear, anxiety, outrage and loss of the ordinary pleasures of life.

## COUNT III:
## VIOLATION OF PLAINTIFF'S *FIRST AMENDMENT* FREE SPEECH RIGHTS PURSUANT TO 42 USC ¶1983

62. Plaintiff restates each of the above paragraphs word for word.

63. Plaintiff complained to Defendants concerning the unlawful discrimination and civil rights violations described above.

64. Plaintiff's complaints and reports of unlawful conduct constitute protected activity under the *Free Speech Clause* of the *First Amendment* to the US Constitution.

65. Defendant Prewitt's and KPSS's adverse actions as described above caused Plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity.

66. The adverse actions described above were motivated at least in part as a response to Plaintiff's exercise of her constitutional rights.

67. Plaintiff's complaints of Defendants' violation of her civil rights touch on a matter of substantial public concern.

68. Plaintiff's interest in commenting on matters of public concern outweigh the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

**PLAINTIFF REQUESTS** that this Court enter a judgment against Defendants as follows:

1. Legal relief:

a. a judgment for lost wages and benefits, past and future, in whatever amount Plaintiff is found to be entitled

b. compensatory damages in whatever amount she is found to be entitled

c. punitive and exemplary damages, where appropriate, commensurate with the wrong and Defendants' ability to pay

d. an award of interest, costs and attorney fees.

2. Equitable relief:

a. an order reinstating Plaintiff to the position she would have had if there had been no discrimination and retaliation by Defendants

b. an injunction prohibiting any acts if retaliation or discrimination

c. an award of interest, costs and reasonable attorney fees

d. whatever other equitable relief appears appropriate at the time of trial.

Respectfully submitted,

 */s/ Ben M. Gonek*
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-3377
313-963-9310 (fax)
joel@joelbsklarlaw.com

Dated:  December 1, 2016

## JURY DEMAND

Plaintiff demand a jury trial of this cause.

                                            Respectfully submitted,

                                            */s/ Ben M. Gonek*
                                            BEN M. GONEK (P43716)
                                            Attorney for Plaintiff
                                            500 Griswold, Suite 2450
                                            Detroit, MI 48226
                                            313-963-3377
                                            313-963-9310 (fax)
                                            ben@goneklaw.com

Dated:  December 1, 2016